OPINION
{¶ 1} Appellant Charlotte Bowers appeals a child custody decision made by the Mahoning County Court of Common Pleas, Juvenile Division. Appellant is the natural mother of twin boys Montrel and Monqueil Bowers. On July 19, 2004, the trial court overruled the mother's objections to the magistrate's report, and granted permanent custody of the children to the Mahoning County Children Services Board (MCCSB), Appellee, here. Appellant contends that there is no clear and convincing evidence in the record to show that: (1) she posed a continuing danger to the children; (2) MCCSB attempted to reunite the boys with Appellant after she was released from prison; and (3) MCCSB attempted to place the boys with a suitable family member. Appellant is correct that MCCSB failed to make reasonable efforts to reunite Appellant with her children, and therefore, we reverse the juvenile court judgment and remand this case for further proceedings.
 PROCEDURAL AND FACTUAL BACKGROUND {¶ 2} On August 27, 2000, the MCCSB took custody of the minor children Montrel and Monqueil Bowers pursuant to Juv.R. 6. The children are twins and were born on July 25, 2000. The immediate reason for MCCSB taking custody of the children was that Appellant had dropped one of the them and had taken the child to a hospital for treatment.
 {¶ 3} While the children were in the temporary custody of MCCSB, Appellant began serving a prison term for child endangerment, arising out of an incident in October of 1999 involving the four older siblings of the twins. Appellant left the older children by themselves and one of them sustained injuries, including broken bones. (Tr., p. 84.) Appellant pleaded guilty to two counts of child endangerment on March 28, 2000, and she started serving her prison term in September of 2000. She was released from prison on August 7, 2002.
 {¶ 4} On October 10, 2000, the children were adjudicated to be dependent children.
 {¶ 5} On November 12, 2000, MCCSB filed a motion to bypass reasonable efforts, "to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home[.]" R.C. § 2151.419(A)(2). The motion was granted on December 21, 2000.
 {¶ 6} On August 28, 2001, MCCSB filed a motion to obtain permanent custody. Several continuances were granted to allow home studies to be completed on JoRita Bowers, the maternal grandmother. Prior to the permanent custody hearing, JoRita Bowers filed a motion for permanent custody of the boys.
 {¶ 7} A permanent custody hearing took place on April 30, 2002, which was held before a magistrate.
 {¶ 8} On May 29, 2002, the magistrate overruled JoRita Bowers' motion for permanent custody.
 {¶ 9} On June 6, 2002, the magistrate sustained MCCSB's motion for permanent custody.
 {¶ 10} Timely objections were filed to both decisions of the magistrate. A hearing was held on September 5, 2002, to dispose of the objections. On September 9, 2002, the juvenile court judge filed a judgment entry ordering a new trial on all issues and remanding the case to the magistrate. A new hearing was scheduled for December 9, 2002, to deal with both pending motions for permanent custody.
 {¶ 11} On November 5, 2002, Appellant filed a motion for permanent custody of the children.
 {¶ 12} On November 12, 2002, Appellant filed a motion for a home study to be completed on Gwendolyn Southerland, a first cousin of Appellant who resided in California. She had never met the children, and had not had any contact with Appellant since 1995. (7/12/04 Guardian Ad Litem report.)
 {¶ 13} On November 19, 2002, the magistrate overruled the motion for a home study of Gwendolyn Southerland, explaining that it was untimely filed because it was too close to the time of the scheduled trial, and because Ms. Southerland had not yet made an appearance in the case in any capacity. On December 2, 2002, Appellant filed objections to the November 19, 2002, magistrate's decision.
 {¶ 14} The second permanent custody hearing did take place before a magistrate on December 9, 2002. The magistrate issued its decision on May 22, 2003, and again awarded permanent custody to MCCSB.
 {¶ 15} The trial court adopted the magistrate's decision on June 10, 2003, but also allowed additional time to file objections. Appellant eventually filed objections on June 22, 2004. The objection's hearing took place on July 19, 2004. There is no transcript of that hearing in the record on appeal. With some reluctance, the trial court overruled the objections and once again adopted the magistrate's decision.
 {¶ 16} Appellant filed a timely appeal on August 30, 2004.
 ASSIGNMENT OF ERROR {¶ 17} "IT IS AN ABUSE OF DISCRETION AND A CONSTITUTIONAL VIOLATION FOR CHILDREN SERVICES TO TAKE PERMANENT CUSTODY OF ANY DEPENDENT CHILDREN WITHOUT MEETING THE STATUTORY CLEAR AND CONVINCING EVIDENTIARY STANDARD."
 {¶ 18} Appellant sets forth some basic guidelines for reviewing a decision which terminates the parental rights of a natural parent. Appellant contends that parents have a fundamental liberty interest in the care, custody and management of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599. It has been stated many times that the permanent termination of parental rights is the, "family law equivalent of the death penalty in a criminal case." Inre Hayes, 79 Ohio St.3d 46, 48, 679 N.E.2d 680, quoting In re Smith
(1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45.
 {¶ 19} In Santosky, the United State Supreme Court held that: "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence."Santosky at 747-748, 102 S.Ct. 1388, 71 L.Ed.2d 599.
 {¶ 20} Appellant's legal analysis is correct up to this point. The relationship between a parent and child is a constitutionally protected liberty interest. In re Adoption of Zschach (1996), 75 Ohio St.3d 648, 653,665 N.E.2d 1070. It is well recognized that a parent's right to raise a child is an essential and basic civil right. In re Murray (1990),52 Ohio St.3d 155, 157, 556 N.E.2d 1169, quoting Stanley v. Illinois
(1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. When a court is called upon to decide whether or not to permanently terminate parental rights, the court must grant the affected parent, "every procedural and substantive protection the law allows." In re Smith, supra,77 Ohio App.3d at 16, 601 N.E.2d 45. The party attempting to terminate those parental rights must prove its case by clear and convincing evidence. Santosky, supra.
 {¶ 21} The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases, but is less stringent than "beyond a reasonable doubt," the standard used in criminal cases. State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. An appellate court will not substitute its own judgment for that of a trial court unless the determination is against the manifest weight of the evidence, meaning that there is some competent and credible evidence to support the trial court's factual findings. In re Adoption of Masa (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140, paragraph two of the syllabus; In reStarkey, 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d 665, ¶ 16.
 {¶ 22} It is usually stated that a trial court's determination in a custody proceeding is subject to reversal only upon a showing of an abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. Nevertheless, in the context of proceedings involving the permanent termination of parental rights, the court's discretion is limited by the legal principles set forth above.
 {¶ 23} Appellant's assignment of error has three sub-parts.
 {¶ 24} 1. Whether there was clear and convincing evidence that Appellant posed an ongoing threat to the children.
 {¶ 25} Appellant contends that the trial court was required to find, by clear and convincing evidence, that she posed an ongoing danger to the children. Appellant's argument appears to be based on the language of R.C. § 2151.414(E)(6), which states:
 {¶ 26} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the courtdetermines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the followingexist as to each of the child's parents, the court shall enter a findingthat the child cannot be placed with either parent within a reasonabletime or should not be placed with either parent:
 {¶ 27} "* * *
 {¶ 28} "(6) The parent has been convicted of or pleaded guilty to anoffense under division (A) or (C) of section 2919.22 or under section2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05,2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25,2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11,2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the childwas a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent whocommitted the offense poses an ongoing danger to the child or a siblingof the child." (Emphasis added.)
 {¶ 29} Appellant was convicted of violating R.C. § 2919.22(A), child endangerment, which is one of the statutes listed in R.C. § 2151.414(E)(6). Appellant contends, though, that R.C. § 2151.414(E)(6) also requires a finding that, "the parent who committed the offense poses an ongoing danger to the child or a sibling of the child." Appellant contends that there is no evidence that she poses an ongoing danger to her children.
 {¶ 30} Appellant's reliance on R.C. § 2151.414(E)(6) is not immediately obvious, and to understand it, we must first review the statutory steps that led to the trial court's custody decision. MCCSB had temporary custody of the two boys for approximately 12 months. MCCSB then filed for permanent custody under the authority of R.C. §§ 2151.413(A) and (D), which requires a public children services agency to file for permanent custody after 12 months:
 {¶ 31} "(A) A public children services agency or private child placing agency that, pursuant to an order of disposition under division (A)(2) of section 2151.353 of the Revised Code or under any version of section2151.353 of the Revised Code that existed prior to January 1, 1989, is granted temporary custody of a child who is not abandoned or orphaned may file a motion in the court that made the disposition of the child requesting permanent custody of the child.
 {¶ 32} "* * *
 {¶ 33} "(D)(1) Except as provided in division (D)(3) of this section,if a child has been in the temporary custody of one or more publicchildren services agencies or private child placing agencies for twelveor more months of a consecutive twenty-two month period ending on or after March 18, 1999, the agency with custody shall file a motionrequesting permanent custody of the child. The motion shall be filed in the court that issued the current order of temporary custody. For thepurposes of this division, a child shall be considered to have entered thetemporary custody of an agency on the earlier of the date the child isadjudicated pursuant to section 2151.28 of the Revised Code or the datethat is sixty days after the removal of the child from home." (Emphasis added.)
 {¶ 34} R.C. § 2151.414 provides further procedural requirements that the court must follow in order to grant a motion filed pursuant to R.C. § 2151.413. R.C. § 2151.414(B)(1) states:
 {¶ 35} "(B)(1) Except as provided in division (B)(2) of this section,the court may grant permanent custody of a child to a movant if the courtdetermines at the hearing held pursuant to division (A) of this section,by clear and convincing evidence, that it is in the best interest of thechild to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 36} "(a) The child is not abandoned or orphaned or has not been inthe temporary custody of one or more public children services agencies orprivate child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the childcannot be placed with either of the child's parents within a reasonabletime or should not be placed with the child's parents.
 {¶ 37} "(b) The child is abandoned.
 {¶ 38} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 39} "(d) The child has been in the temporary custody of one or morepublic children services agencies or private child placing agencies fortwelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 40} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." (Emphasis added.)
 {¶ 41} It appears from the record that MCCSB was premature in filing for permanent custody under R.C. § 2151.413(D)(1), as it had not yet had custody of the children for 12 months. The statutory 12-month time period does not begin on the day that the children services agency first obtains temporary custody. According to the statute, the time period begins either on: (1) the date the child is adjudicated pursuant to R.C. §2151.28; or (2) the date beginning 60 days after the child is removed from the home. The reference to R.C. § 2151.28 deals with the procedure for adjudicating a child as a delinquent, unruly, abused, neglected or dependent child. In the instant case, the twin boys were adjudicated as dependent children on October 10, 2000 (some references in the record are to October 5, 2000, but the court's journal entry is clearly dated October 10, 2000). Thus, the earliest that MCCSB could have applied for permanent custody under R.C. § 2151.414(D)(1) would have been October 10, 2001. The motion the MCCSB filed, though, is dated August 29, 2001.
 {¶ 42} The Ohio Supreme Court has held, in no uncertain terms that: "[b]efore a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period." In re C.W.,104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, at syllabus. In reC.W. held that the 12-month time period must be satisfied as of the date that the children services agency files the motion for permanent custody, and it does not matter if more than 12 months have passed by the time the custody hearing takes place. Id. at ¶ 26. Thus, the trial court was in error when it found that MCCSB had temporary custody of the boys for 12 out of the previous 22 months prior to filing for permanent custody.
 {¶ 43} Because R.C. § 2151.413(D)(1) does not apply, the only other grounds for MCCSB to apply for permanent custody come from R.C. §2151.413(A), which allows a children services agency to apply for permanent custody at any time after a child has been adjudicated a dependent child. Under this section, there is no 12-month requirement. Under the further requirements of R.C. § 2151.414(B)(1), though, the court could not actually grant permanent custody to MCCSB until it first found that one of the factors listed in (B)(1)(a)-(d) had been satisfied. The second, third and fourth factors could not apply, because the boys were not adjudicated as abandoned, orphaned, or properly found to have been in the custody of MCCSB for 12 months prior to filing for permanent custody. Thus, the court was required to find, by clear and convincing evidence, that, "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents," and that placement with MCCSB was in the children's best interests. R.C. § 2151.414(B)(1)(a).
 {¶ 44} The magistrate made these two findings on May 22, 2003. In its findings of fact and conclusions of law the magistrate determined, "by clear and convincing evidence that Charlotte Bowers has been convicted of an offense specified and defined by ORC 2151.414(E)(6) and poses an on-going danger to the subject children or their siblings. The subject children should not be placed with Charlotte Bowers." (5/22/03 Findings of Fact, p. 2.) The magistrate also found that, "[b]ased on clear and convincing evidence, pursuant to ORC 2151.414(D)(E), the Court finds that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent; that the children's return to the home would be contrary to the children's best interest and welfare, and that it is in the best interest of the children to permanently commit the children to Mahoning County CSB." (5/22/03 Findings, p. 3.)
 {¶ 45} The manner in which the court determines the best interests of the child in this situation is spelled out in R.C. § 2151.414(D):
 {¶ 46} "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 47} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 48} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 49} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 50} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 51} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 52} "For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 53} The best interest factors in R.C. § 2151.414(D) are not exclusive, and the court can look at any other factors that it considers to be relevant.
 {¶ 54} Furthermore, under the terms of R.C. § 2151.414(E), if the court will actually decide whether a, "child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents," the court must consider all the factors in R.C. §2151.414(E)(1)-(16). In this case, the court was required to determine whether the children should be placed with the parents within a reasonable period of time, so it had to consider all the factors listed in R.C. § 2151.414(E) (1)-(16). This included the factor listed in R.C. § 2151.414(E)(6), which asks whether the parent has been convicted of any number of crimes including child endangering and whether the parent poses an ongoing danger to the child. This is where Appellant's argument becomes relevant. In order to properly find that the children could or should not be placed with a parent within a reasonable period of time, the court had to find one or more of the factors in R.C. § 2151.414(E), and the court relied on (E)(6). If the court did not properly find that R.C. § 2151.414(E)(6) applied, it had to find some other factor in R.C. § 2151.414(E) applied. Appellant argues that R.C. § 2151.414(E)(6) was not properly applied because Appellant did not pose an ongoing danger to the children.
 {¶ 55} The record, though, indicates that the court properly found R.C. § 2151.414(E)(6) applied, and also found that R.C. § 2151.414(E)(5) applied. Going specifically to Appellant's concern, the record does indicate that Appellant posed an ongoing danger to the children. It is undisputed that, in August 2000, Appellant dropped one of the two boys (who were at that time about one month old), and took him to the hospital. Dropping a one-month old baby certainly presents a danger to the baby.
 {¶ 56} R.C. § 2151.414(E)(6) requires: (1) evidence that the parent pleaded guilty or was convicted of one of the offenses listed, which includes child endangerment; (2) that the victim be the child or a sibling of the child; and (3) that the parent poses an ongoing danger to the child or a sibling of the child. All three elements are satisfied by the record: Appellant committed the crime of child endangerment, the victims of the crime were siblings of the two boys that were the subject of the custody hearing, and Appellant posed a danger to the boys by dropping one of them.
 {¶ 57} Furthermore, even if R.C. § 2151.414(E)(6) were not satisfied, the court satisfied R.C. § 2151.414(E)(5) which states: "The parent is incarcerated for an offense committed against the child or a sibling of the child[.]" It is clear from the record that Appellant was incarcerated on August 28, 2001 (when MCCSB filed for permanent custody) for an offense committed against the siblings of the twins. The magistrate found that Appellant was incarcerated from September, 2000 until August, 2002. (5/22/03 Findings, p. 2.) R.C. § 2151.414(E)(5) does not have a further requirement to find that the parent poses an ongoing danger to the child.
 {¶ 58} To further complicate matters, Appellant has failed to file a transcript of the hearing that took place on July 19, 2004, which addressed the objections to the May 22, 2003, magistrate's decision. It is apparent from the trial court's judgment entry that an actual hearing took place, arguments were made, and that some evidence was submitted, including a guardian ad litem's report. Without access to this transcript, it is impossible to say what further reasons the court might have had to adopt the magistrate's decision and overrule Appellant's objections. It is the Appellant's responsibility to submit on appeal all aspects of the record that are necessary to review the assignments of error presented on appeal. App.R. 9(B). If the necessary transcripts are not included, a reviewing court will normally presume the regularity of the proceedings and the judgment, and rule against the Appellant. Natl.City Bank v. Beyer (2000), 89 Ohio St.3d 152, 160, 729 N.E.2d 711.
 {¶ 59} Based on the foregoing analysis, there seems to be no error in the trial court's adoption of the magistrate's finding that Appellant posed an ongoing danger to the children and that placement with MCCSB was in the best interests of the children. The error that did occur, namely, the premature filing of a motion for permanent custody after having temporary custody for 12 out of 22 months, is not, in and of itself reversible error, because the court had an alternative basis for making its ruling.
 {¶ 60} 2. Whether MCCSB made reasonable efforts to reunite the children with Appellant after her release from incarceration.
 {¶ 61} Appellant argues that MCCSB was required to prove that it made reasonable efforts to reunite the boys with Appellant. This Court has previously stated that:
 {¶ 62} "Whenever a trial court removes a child from the child's home or continues the removal of a child from the child's home, it must determine whether the agency has made reasonable efforts to prevent the removal, or to eliminate continued removal, or to make it possible for the child to return home. Starkey at ¶ 14; R.C. 2151.419(A)(1). This statute applies regardless of how long the child has been in the agency's temporary custody. Id. `The agency shall have the burden of proving that it has made those reasonable efforts.' R.C. 2151.419(A)(1). A reasonable effort is `an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage.' In re Weaver (1992),79 Ohio App.3d 59, 63[, 606 N.E.2d 1011].
 {¶ 63} "When a trial court is considering whether the agency made reasonable efforts to prevent the removal, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Brewer (Feb. 12, 1996), 7th Dist. No. 94-B-28. Accordingly, the agency does not need to show that it made reasonable efforts to prevent the removal if it can show that those efforts would have been futile. In re T.K., 9th Dist. No. 03CA0006, 2003-Ohio-2634, ¶ 16, citing In re Jackson (Aug. 13, 1999), 2nd Dist. No. 17514; In re Smallwood (Jan. 26, 1998), 12th Dist. No. CA97-02-041; In re Crosten (Mar. 21, 1996), 4th Dist. No. 95CA1692." Inre Elliott, 7th Dist No. 03JE30, 03JE33, 2004-Ohio-388, ¶ 39-40.
 {¶ 64} MCCSB responds by asserting that it was not required to make reasonable efforts to reunite the boys with Appellant because it utilized the bypass procedure set forth in R.C. § 2151.419(A)(2):
 {¶ 65} "(A)(2) If any of the following apply, the court shall make adetermination that the agency is not required to make reasonable effortsto prevent the removal of the child from the child's home, eliminate thecontinued removal of the child from the child's home, and return thechild to the child's home:
 {¶ 66} "(a) The parent from whom the child was removed has been convicted of or pleaded guilty to one of the following:
 {¶ 67} "(i) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 {¶ 68} "(ii) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 69} "(iii) An offense under division (B)(2) of section 2919.22 ofthe Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 {¶ 70} "(iv) An offense under section 2907.02, 2907.03, 2907.04,2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 71} "(v) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (A)(2)(a)(i) or (iv) of this section.
 {¶ 72} "(b) The parent from whom the child was removed has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food. If the parent has withheld medical treatment in order to treat the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body, the court or agency shall comply with the requirements of division (A)(1) of this section.
 {¶ 73} "(c) The parent from whom the child was removed has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring such treatment of the parent.
 {¶ 74} "(d) The parent from whom the child was removed has abandoned the child.
 {¶ 75} "(e) The parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353,2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 76} MCCSB argues that Appellant pleaded guilty to child endangerment and that was sufficient for the court to grant its motion to bypass the reasonable efforts requirement. MCCSB, though, is mistaken in this assertion. Appellant was convicted of violating R.C. § 2919.22(A), child endangerment, with a further specification that the crime involved serious physical harm to the child, converting the crime into a third degree felony. Although this is a very serious crime, there is no mention in R.C. § 2151.419(A)(2) that the crime that Appellant committed is permitted to be used as a reason to bypass reasonable efforts to reunite Appellant with her boys. R.C. § 2151.419(A)(2)(a)(iii) does mention a related crime: "[a]n offense under division (B)(2) of section 2919.22 of the Revised Code." However, R.C. § 2919.22(B)(2) refers to torture or cruel abuse of a child, which is a different crime. Because Appellant did not commit a crime listed under R.C. § 2151.419(A)(2), the trial court erred in sustaining MCCSB's motion to bypass reasonable efforts.
 {¶ 77} MCCSB further argues that it actually made reasonable efforts to reunite the boys with Appellant. MCCSB argues that it developed a case plan that included visitation with Appellant after she was released from incarceration. Although MCCSB is correct that the latest case plans included some limited supervised visitation provisions, this can hardly be called clear and convincing evidence that MCCSB made reasonable efforts to reunite Appellant with her children.
 {¶ 78} Based on the preceding analysis, the record reflects that Appellant was denied the full procedural protection afforded by the child custody statutes. It was reversible error to sustain MCCSB's motion to bypass reasonable efforts to reunite Appellant with her two boys, and for MCCSB to have failed to make reasonable efforts to reunite Appellant with her children.
 {¶ 79} 3. Whether MCCSB sufficiently investigated placement of the boys with other family members.
 {¶ 80} Appellant argues that MCCSB should have made more of an effort to place the children with a family member, specifically either JoRita Bowers or Gwendolyn Southerland. Appellant bases this argument on two statutes. The first is R.C. § 2151.353(A)(2), which states:
 {¶ 81} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 82} "* * *
 {¶ 83} "(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court;"
 {¶ 84} By its own terms, R.C. § 2151.353(A)(2) gives the trial court a number of options, only one of which is to place the child with a relative. Therefore, Appellant's argument is incorrect that the trial court was required to exhaust every possible option for placing the boys with a family member prior to choosing some other option.
 {¶ 85} Appellant also cites R.C. §§ 2151.412(A) and (G), which state:
 {¶ 86} "(A) Each public children services agency and private child placing agency shall prepare and maintain a case plan for any child to whom the agency is providing services and to whom any of the following applies:
 {¶ 87} "(1) The agency filed a complaint pursuant to section 2151.27
of the Revised Code alleging that the child is an abused, neglected, or dependent child;
 {¶ 88} "(2) The agency has temporary or permanent custody of the child;
 {¶ 89} "* * *
 {¶ 90} "(G) In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 {¶ 91} "(1) A child who is residing with or can be placed with the child's parents within a reasonable time should remain in their legal custody even if an order of protective supervision is required for a reasonable period of time;
 {¶ 92} "(2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;
 {¶ 93} "(3) If a child described in division (G)(2) of this section has no suitable member of the child's extended family to accept legal custody, the child should be placed in the legal custody of a suitable nonrelative who shall be made a party to the proceedings after being given legal custody of the child;
 {¶ 94} "(4) If the child has no suitable member of the child's extended family to accept legal custody of the child and no suitable nonrelative is available to accept legal custody of the child and, if the child temporarily cannot or should not be placed with the child's parents, guardian, or custodian, the child should be placed in the temporary custody of a public children services agency or a private child placing agency;
 {¶ 95} "(5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency;
 {¶ 96} "(6) If the child is to be placed for adoption or foster care, the placement shall not be delayed or denied on the basis of the child's or adoptive or foster family's race, color, or national origin."
 {¶ 97} R.C. § 2151.412(G), quoted above, provides general principles for an agency to follow when it has temporary custody of a child. One of those principles is that the child should be placed in the care of a member of its extended family if neither parent is suitable for placement. It has been said that the language of this statute is precatory rather than mandatory, and does not require a court to act in any specific manner when considering custody issues. In re CunninghamChildren, 5th Dist. No. 2003CA00054, 2003-Ohio-2805, ¶ 22; In re Hiatt
(1983), 86 Ohio App.3d 716, 722, 621 N.E.2d 1222; In re Dixon (Nov. 29, 1991), 6th Dist. No. L-91-021. Furthermore, R.C. § 2151.412 deals with developing a case plan during temporary custody, and does not deal with the legal and procedural requirements surrounding the permanent custody determination. In re Hiatt, supra, 86 Ohio App.3d at 722.
 {¶ 98} There is no merit in Appellant's contention that the trial court was somehow required to pursue and exhaust all possibilities of placing the children with family members prior to granting permanent custody to MCCSB.
 {¶ 99} Assuming arguendo that placement with a family is member is at least a possible or important consideration in the best interests of the child, there appear to be additional problems with Appellant's argument. For example, the original request for a home study for Gwendolyn Southerland was filed on November 12, 2002, only three weeks before the second permanent custody hearing was scheduled, and over fourteen months after MCCSB filed its motion for permanent custody. There does not appear to be any indication in the record prior to this time that Ms. Southerland existed, much less was a possible permanent custodian for the boys.
 {¶ 100} Furthermore, a guardian ad litem's report filed on July 12, 2004, indicates that Ms. Southerland was only marginally interested in obtaining custody of the boys and that she did not want to disrupt their current placement if it would cause stress to the boys. The guardian ad litem's report also indicated that Ms. Southerland had never met the boys.
 {¶ 101} The trial court's August 4, 2004, Judgment Entry, ruling on a hearing held on July 19, 2004, also indicates that the parties stipulated that Ms. Southerland, "did not want to interfere with custody of the minor children nor disrupt their current placement." Appellant did not file a transcript of the July 19, 2004, hearing, and thus, we will presume the regularity of the findings made by the juvenile court in that proceeding.
 {¶ 102} Although there is no reversible error in the court's refusal to consider Ms. Southerland for placement, the record clearly indicates that MCCSB never seriously investigated her for placement. The trial court notes this in its August 4, 2004, Judgment Entry: "Placement of the minor children should first have been attempted with interested and appropriate family members. C.S.B. initially failed to pursue such avenues. Gwendolyn Southerland initially appears to have met the criteria for placement but was never considered. C.S.B. represented to the Court that Ms. Southerland was neither appropriate nor interested." Although the trial court tried to maintain its decorum in ruling on this matter, it essentially concluded that MCCSB deceived the court and misrepresented the facts about Ms. Southerland.
 {¶ 103} The July 12, 2004, guardian ad litem's report contains a lengthy list of errors and misrepresentations that MCCSB made about Ms. Southerland. MCCSB acknowledges the errors, but concludes that they do not rise to the level of reversible error because Ms. Southerland has expressed no further interest in taking the boys or in disrupting their lives. Although MCCSB is technically correct, the additional errors involving Ms. Southerland reinforce our previous conclusion that the case should be remanded for further proceedings.
 {¶ 104} Appellant also argues that JoRita Bowers, the maternal grandmother, was a suitable family member for placement. Appellant relies on certain evidence that might support placement with JoRita: her relationship with the children as their grandmother; her steady retirement income of $1200 per month; her moderate age of 52 years; the fact that JoRita moved to a bigger apartment in hopes of accommodating the needs of the boys; and her regular involvement with all eleven of her grandchildren. There was significant evidence, though, that contradicts the picture painted by Appellant. There was evidence that JoRita was charged with aggravated menacing, unlawful possession of dangerous weapons, having a weapon while under a disability, abuse, and neglect, from 1988-1995. (12/9/02 Tr., p. 27.) There were multiple instances of abuse in the MCCSB records. (12/9/02 Tr., pp. 27, 55.) The guardian ad litem testified that JoRita made no effort to visit the boys until after MCCSB made it clear that it was going to petition for permanent custody. (Tr., p. 69.) JoRita had no means of transportation, nor has she ever had a driver's license. (Tr., pp. 28, 97.) She had high blood pressure, thyroid disease, and is insulin-dependent. (Tr., p. 98.) Thus, the record contains considerable evidence that JoRita was not suitable for placement, and the trial court apparently relied on this evidence rather than the evidence emphasized by Appellant.
 {¶ 105} In conclusion, we sustain Appellant's assignment of error based on our conclusion that the juvenile court erroneously granted MCCSB's motion to bypass reasonable measures to reunite Appellant with her two boys, and because MCCSB in fact failed to make reasonable efforts to reunite Appellant with her children. We therefore reverse the judgment of the Mahoning County Court of Common Pleas, Juvenile Division, and remand this case for further proceedings consistent with this Opinion.
Vukovich, J., concurs.
DeGenaro, J., concurs in judgment only; see concurring in judgment only opinion.