[Cite as *In re M.G.*, 2023-Ohio-3423.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

IN RE:

M.G., ALLEGED DEPENDENT CHILD

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0078**

---

Juvenile Appeal from the
Court of Common Pleas, Juvenile Division
of Mahoning County, Ohio
Case No. 2019 JC 00559 JUV

**BEFORE:**
Carol Ann Robb, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jennifer Boyle Beck*, 3685 Stutz Drive, Suite 100, Canfield, Ohio 44406 for Appellant-Mother and

*Atty. Kristie M. Weibling*, 222 W. Federal Street, 4th Floor, Youngstown, Ohio 44503 for Appellee-Mahoning County Children Services.

*Atty. Rhonda G. Santha,* 6401 State Route 534, West Farmington, Ohio 44491 for Appellee-Father

Dated: September 21, 2023

**Robb, J.**

{¶1} Appellant S.G. (the mother) appeals the decision of the Mahoning County Common Pleas Court Juvenile Division granting custody of M.G. (the child) to Appellee A.G. (the father) in a dependency action filed by Appellee Mahoning County Children Services (the agency). The mother contends the agency should have engaged in reasonable efforts to restore the child's custody to her after she was released from prison (even though the prior case plan had a permanency goal for placement with the father, temporary custody had been transferred from the agency to the father a year before the mother's release, and the agency's motion to grant the father legal custody was pending). The mother also claims the decision to award the father custody was not in the child's best interest. For the following reasons, the trial court's decision is affirmed.

## STATEMENT OF THE CASE

{¶2} In May 2019, M.G. was four years old when she and two half-siblings were removed from the mother's home. The sheriff's department invoked Juvenile Rule 6, and the agency filed a dependency complaint. It was alleged the mother failed to provide proper medical care and used excessive discipline as to the child's sibling and failed to provide proper supervision and food for the child and her other sibling. Temporary shelter care was granted to the agency. The mother was incarcerated in an unrelated criminal case beginning in June 2019. The agency initiated a kinship placement with the maternal grandmother.

{¶3} After the July 2019 hearings, the children were adjudicated dependent, and the agency was granted temporary custody. (8/23/19 Mag.Dec.; 8/26/19 J.E.). A case plan approved by the court provided the father multiple case plan objectives with a permanency goal, including substance abuse assessment, treatment, and random drug screenings. The mother was serving a two-year prison sentence, and the case plan provided for her communication with the child while in prison.

{¶4} In November 2019 and February 2020, the father filed motions seeking custody of the child. In April 2020, the agency moved to terminate the agency's temporary custody of the child and to grant the father custody with protective supervision.

**{¶5}** Beginning June 5, 2020, the court terminated the agency's temporary custody and granted the father temporary custody of the child with protective supervision. (5/29/20 J.E.). The court adopted the amended case plan with a goal to maintain the child in his home. (7/14/20 Mag.Or.).

**{¶6}** In November 2020, the agency moved to terminate protective supervision and to grant unrestricted legal custody to the father as he requested. The mother was released from prison on June 20, 2021. In August 2021, she filed a motion for legal custody of the child. The magistrate presided over the hearing on the parties' motions from September to December 2021. Testimony was presented by the caseworker, the father, the mother, and the guardian ad litem. The court conducted an in camera interview with the child.

**{¶7}** In ruling on the motions, the magistrate terminated the protective supervision, awarded legal custody to the father, and granted the mother standard visitation. (2/16/22 Mag.Dec.). The mother objected to the decision. The trial court overruled the mother's objections, adopted the magistrate's decision, reiterated the findings and conclusions, and entered judgment accordingly. (6/17/22 J.E.). The mother filed a timely notice of appeal. Both the father and the agency filed briefs in response.

LEGAL CUSTODY REVIEW

**{¶8}** "[L]egal custody where parental rights are not terminated is not as drastic a remedy as permanent custody." *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (2001). Accordingly, "[t]he trial court's standard of review is not clear and convincing evidence, as it is in a permanent custody proceeding, but is merely preponderance of the evidence." *Id.* An award of legal custody is reviewed for an abuse of discretion. *Id.* An abuse of discretion exists if the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶9}** If the court's decision on the children's best interests or on other factual issues surrounding legal custody is not supported by competent and credible evidence, then it is unreasonable. *Nice*, 141 Ohio App.3d at 455. Credibility issues are critical in custody cases, and important information may be evident from the demeanor and attitude of the witnesses that does not translate into the record. *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). The trial court is in the best position to weigh the

testimony and observe the witnesses' demeanor in order to gauge their credibility. *Id.* at 418-419. To the extent a trial court's application of a statute presents a question of law, our review is de novo. *In the Matter of J.R.P.*, 7th Dist. Mahoning No. 17 MA 0169, 2018-Ohio-3938, 120 N.E.3d 83, ¶ 24.

ASSIGNMENT OF ERROR ONE

{¶10} The mother sets forth two assignments of error, the first of which alleges:

"THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT MAHONING COUNTY CHILDREN SERVICES MADE REASONABLE EFFORTS TO REUNIFY THE MINOR CHILD WITH APPELLANT."

{¶11} The mother notes the case plan approved by the court in August 2019 had a permanency goal for the father while providing the mother cards, letters, and phone calls during her incarceration. Her argument focuses on the case plan applicable to the period after she was released from prison in June 2021 (and after the maternal grandmother died in July 2021). She says this case plan discussed the agency's fear for the children's safety due to the severity of her drug charges but then found her suitable for placement as to the other two children. It contained goals related to obtaining a stable home, assessments, and evaluations. To the extent a goal involved the mother's custody, it related to her two other children; as related to the custody of M.G., the existing case plan had the goal of maintaining the child in the home with the father. (Tr. 40-42, 53-54, 57-58).

{¶12} The mother concludes the court abused its discretion in finding the agency made reasonable efforts where the agency failed, after her release from prison, to amend or formulate a case plan with reunification goals to help the mother obtain custody of M.G. from the father. The mother suggests the two hours per week of visitation granted to her by the court after her release from prison supports her argument that the agency failed to make reasonable efforts (while the agency points out their efforts after her release assisted her in obtaining a standard visitation order).

{¶13} The mother cites Ohio Admin. Code. 5101:2:38:05, providing for a family case plan for children who are being provided agency services and stating the child's non-custodial parent is considered a party to the case plan. However, the existence of a case plan does not mean custodial reunification efforts must be provided for the non-

custodial parent. The agency points out in developing the case plan, the agency must make the child the priority in determining whether the child can be placed with a parent within a reasonable period of time (and if so, place the child even if protective supervision is required). R.C. 2151.412(H)(1).

{¶14} The mother says her case is similar to a case where this court found the situation did not qualify for a statutory bypass of the reasonable efforts requirement. *In re Bowers*, 7th Dist. Mahoning No. 04 MA 216, 2005-Ohio-4376, ¶ 76. In that case, the trial court allowed the agency to file a motion to bypass the reasonable efforts requirement while the mother was incarcerated based on the agency's reliance on the section of the statute applicable where certain offenses were committed. This court found the mother's conviction was not one specified in the bypass statute. *Id.*

{¶15} As the agency points out, *Bowers* is distinguishable as it analyzed a specific provision bypassing all agency efforts from the beginning and involved the termination of parental rights and the grant of permanent custody to the agency (with a higher burden of proof). Here, reasonable efforts were formulated at the start of the case with timely reunification goals as to the non-incarcerated parent. A case plan was formulated with a permanency goal to place the child in the father's home due to emergency removal of the child from the mother's home and the mother's subsequent imprisonment. And, the mother is contesting the efforts after her release from incarceration.

{¶16} The father and the agency urge reunification efforts were not necessary after the minor entered the father's temporary custody, stating the reunification goal of the case plan was met and the child was no longer placed outside of the home. It is also pointed out the relationship was then governed by court orders. The father points out the agency asked to terminate protective supervision and grant legal custody to him, urging the mother's subsequent release should not eliminate his permanency plan. He notes the agency's motion was filed more than six months before the mother was released from prison and various delays were encountered (as discussed in the trial court's entry).

{¶17} The father quotes, "the law does not prioritize one parent's parental rights over another's in these types of cases." *In re E.C.*, 9th Dist. Summit No. 30096, 2022-Ohio-1223, ¶ 25 (finding it was not necessary for the court to adopt a future case plan with goals for the mother where the court accomplished the goal of reunification with a

parent by terminating the father's emergency protective supervision and granting him legal custody). As the Ninth District observed, "the overriding purpose of the case plan is to allow the agency to assist the parents in remedying the conditions underlying a child's removal so that the child can be returned safely to one or both parents' custody." *Id.*

**{¶18}** The father also states the mother waived all but plain error in failing to object to the multiple case plans focusing on reunification of M.G. with the father and maintenance of the father as custodian or the mother's post-release case plan lacking a custody goal as to this child. *See In the Matter of A.K.*, 4th Dist. Hocking No. 21CA2, 2021-Ohio-4513, ¶ 43 (applying forfeiture where the case plan issue was raised for the first time on appeal). In addition, he says the mother had not fully met her case plan goals as to the other two children (such as trauma counseling) and could not otherwise show prejudice in the failure to have a custody goal for M.G. within that case plan. *See id.* at ¶ 48 (no prejudice where the mother followed a case plan the agency failed to file with the court). Likewise, the agency points out their efforts in this simultaneous case plan provided pertinent evidence for the court's consideration. The record shows any addition of a goal on the mother's custody of M.G. to the mother's post-release case plan for the two children removed in the same action would have been subject to the same conditions and the evidence regarding that case plan was before the court in determining the competing custody motions.

**{¶19}** We turn to a review of the statutory provision underlying Appellant's argument in R.C. 2151.419(A)(1). This statute applies at hearings held pursuant to the following sections: R.C. 2151.28 (adjudicatory hearing); R.C. 2151.31(E) (ex parte); R.C. 2151.314 (shelter care); R.C. 2151.33 (temporary care); and R.C. 2151.353 (disposition of abused, neglected, or dependent child).

> [A]t any hearing held pursuant to [these sections] at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the

child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. R.C. 2151.419(A)(1).

{¶20} The cited R.C. 2151.353 involves the disposition after adjudication of a child as abused, neglected, or dependent, including committing the child to the temporary custody of an agency or either parent, placing the child in protective supervision, and placing the child in legal custody of either parent. R.C. 2151.353(A)(1)-(3) (among other options). As part of this dispositional order, the court shall journalize a case plan for the child. R.C. 2151.353(E). The court shall retain jurisdiction. R.C. 2151.353(F)(1).

{¶21} Once the agency is granted temporary custody under R.C. 2151.353, the agency can seek various orders under a different statute, including an extension of temporary custody, a return of the child to the parents without restrictions, protective supervision, or legal custody. R.C. 2151.415(A) (among other orders). As the mother recognizes, after the court makes a disposition under this statute, it may modify its order. R.C. 2151.415(F).

{¶22} In arguing R.C. 2151.419(A)(1) was inapplicable to the subsequent stage of the proceedings at issue here, the agency says the grant of legal custody to the father when he already had temporary custody did not involve a hearing "at which the court removes a child from the child's home or continues the removal of a child from the child's home." Additionally, "R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33 or 2151.353." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41-43 (thus holding a court hearing is not required to find reasonable efforts in a permanent custody proceeding unless the agency did not already establish reasonable efforts at earlier stages).

{¶23} In the order finding shelter care was necessary, the court found the agency made reasonable and diligent efforts to prevent the child's removal from the home. (5/31/19 Mag.Or.). The mother was in jail at the time, and the child was placed with the maternal grandmother. The mother entered prison three weeks later (where she remained for two years after which she was released on post-release control).

{¶24} After the July 2019 hearings, the child was adjudicated dependent, a case plan was adopted, and the agency was granted temporary custody in a dispositional order

under R.C. 2151.353.  The court made a finding of reasonable efforts to prevent removal, eliminate the need for placement, make it possible for the child to return home, and/or finalize the permanency plan in effect.  The court pointed to the reasons for removal, the mother's subsequent incarceration, the kinship placement with the maternal grandmother initiated by the agency as the least restrictive environment, and the father's case plan services designed for reunification.  (8/23/19 Mag.Dec.; 8/26/19 J.E.).  There were no objections to the case plan or the decision.

**{¶25}**  The agency's temporary custody was thereafter terminated on the agency's motion when temporary custody with protective supervision was granted to the father in June 2020.  In doing so, the court said the agency "made reasonable and diligent efforts to prevent the need for placement and/or to make it possible for the Minor Child to return home and/or to finalize the permanency plan in effect."  (5/28/20 Mag.Dec.; 5/29/20 J.E.).  In describing those efforts, the court pointed to the following items:  the identification of a relative for placement; the facilitation of expanded visitation with the father; the plan for reunification with the father; services to address substance use with random drug testing; and the mother's continued incarceration.

**{¶26}**  As the agency points out, there was no objection to this magistrate's decision on reasonable efforts by the agency.  The amended case plan with the goal to maintain the child in the father's home was adopted by the court after terminating the agency's temporary custody.  (7/14/20 Mag.Or.).  The agency also points out the trial court adopted an initial case plan and nine amended case plans, but the mother never requested modification of these case plans (such as to the permanency goal, case plan objective, or visitation) as permitted by R.C. 2151.412(F)(2).

**{¶27}**  In the final judgment granting legal custody to the father, the court reiterated a finding that the agency provided reasonable and diligent efforts to place and maintain the child in the home of a parent after the child was removed from the mother and placed in a kinship placement with the grandmother.  The court also reiterated the efforts, stating the permanency plan regarding the father was in the child's best interest.  The court concluded:  "Reasonable efforts were made to prevent the need for placement and/or to make it possible for the Minor Child to return home and/or to finalize the permanency plan in effect."  (6/17/22 J.E.).  The court additionally pointed to the services

provided to the mother after her release, noting she was not provided a case plan for custodial reunification and agency efforts at such reunification were not necessary since the child had already been placed in the father's temporary custody.

**{¶28}** As the mother acknowledges, the standard centers on reasonableness and does not require all available efforts or ask whether the agency could have done more. *In the Matter of W.G.*, 7th Dist. Jefferson No. 22 JE 0002, 2022-Ohio-2342, ¶ 34. She likewise recognizes the agency need not show reasonable efforts if it can show the efforts would have been futile. *See, e.g., In re F.A.T.*, 7th Dist. Monroe No. 14 MO 16, 2016-Ohio-350, ¶ 19. Even before the mother entered prison, M.G. had been removed from the mother's care (for reasons unrelated to her criminal case). Due to the mother's sentence of imprisonment, the agency turned to the other parent in order to return the child to a parent within a reasonable time. Various case plan amendments and proceedings occurred while the mother was imprisoned. "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C. 2151.419(A)(1). The father met his case plan goals, had temporary custody, and was awaiting a hearing on his legal custody motion with termination of protective supervision (joined by the agency) long before the mother was released from prison after a two-year term. The court's findings on reasonable efforts are supported by the record. Moreover, the mother's release from prison did not require the agency to eliminate the existing case plan with the goal of maintaining the child with the father, which he successfully completed, and enact a new plan calling for removal of the children from the father's temporary custody. This assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

**{¶29}** Appellant's second assignment of error argues:

"THE TRIAL COURT'S DECISION GRANTING MAHONING COUNTY CHILDREN SERVICES' MOTION FOR LEGAL CUSTODY TO FATHER AND DENYING MOTHER'S MOTION FOR LEGAL CUSTODY WAS NOT IN THE MINOR CHILD'S BEST INTEREST, WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶30}** In determining a legal custody motion, the court shall consider the child's best interest. R.C. 2151.42(A). *See also* R.C. 2151.415(F). The cases cited by the

parties note the statute does not point to specific best interest factors but courts can consider the best interest factors in R.C. 2151.414(D) (applicable to permanent custody) in conjunction with R.C. 3109.04(F)(1) (applicable to allocation of parental rights). *See, e.g., In re K.D.*, 2017-Ohio-4161, 92 N.E.3d 123, ¶ 7 (9th Dist.). The permanent custody statute lists factors such as the child's interactions, interrelationships, wishes, custodial history, and need for permanence. R.C. 2151.414(D) (and whether subdivisions (E)(7)-(11) are applicable). The custody statute includes similar considerations and additionally lists the child's adjustment, the mental and physical health of all involved, support arrearage, the history and likelihood of honoring visitation orders, certain convictions, and establishment of a residence out of state or plan to do so. R.C. 3109.04(F)(1).

**{¶31}** The mother refers to arguments in the prior assignment of error and says the case plan's lack of goals for her to regain custody of M.G. hindered the court's ability to make a fair determination of the child's best interest in relation to her progress. The mother says she was in substantial compliance with the case plan initiated after her release from prison, as she was in the process of finding the recommended trauma counseling. There was discussion of a re-evaluation and counseling due to an attempted overdose and suicidal ideations prior to the mother's incarceration. The mother emphasizes she: completed psychological and drug assessments; obtained employment; had a safe and stable home; demonstrated she was able to meet the needs of the other two children placed in her care; and had none of the convictions listed in the best interest statutes.

**{¶32}** The father urges the trial court's decision was not unreasonable or arbitrary, stating the court recognized the bond between the mother and the child and importance of the child's increased contact with the mother and her half-siblings but reasonably found the child's best interest was served by maintaining the child in the father's home through a grant of legal custody. The agency agrees, pointing out: the father actively sought custody and engaged in agency services (after the May 2019 removal of the child from the mother and the mother's June 2019 incarceration); the child (who was seven years old at the time of the hearing) lived in his sole custody since June 5, 2020; the child was bonded with the father, who was attentive to her needs and involved with her school and extra-curricular activities; the father facilitated the child's contact with the mother and her

relatives; he had a cooperative relationship with the maternal grandmother (before her death); and the mother failed to truly accept responsibility for the children's initial removal or for her subsequent incarceration. The agency also notes the court considered the mother's case plan progress with her other children in providing her standard visitation with M.G. within the order granting legal custody to the father.

{¶33} The mother emphasizes M.G. lived with her from the time she was born until age four when the mother was incarcerated (in June 2019). It was noted there was no prior court order granting the mother custody. The mother claims the child was never the focus of the father's life during that time. As the father emphasizes, the trial court found there was "clear and convincing evidence" (more than the required preponderance of the evidence standard) to show the father made the child the focus of his life.

{¶34} Although the mother was imprisoned on drug charges from June 2019 until June 2021, she points to the father's early positive drug tests showing Tramadol and marijuana, after he contacted the agency due to the children's removal from the mother. His case plan required safe and stable housing, an ability to meet the child's needs, substance abuse treatment, and random drug testing with which he complied. The mother also notes when the father first received custody in June 2020, he tested positive for marijuana. (Tr. 25). The report showed a low level, which was not concerning to the agency or the guardian ad litem, and the court pointed out his subsequent monthly random drug screens were negative. Additionally, the caseworker testified the father was fully cooperative with the agency, including during unannounced home visits.

{¶35} The mother emphasizes the father's past conviction for illegally possessing a gun and later for possessing a weapon while under disability, noting he also acknowledged prior charges involving drugs, robbery, and felonious assault. (Tr. 138-139). Notably, the court found the father successfully completed his parole, "turned his life around after being released from prison several years ago," and successfully completed his case plan goals. We also note the mother was on post-release control after her release from prison.

{¶36} The maternal grandmother, who had kinship placement of two of the mother's other children, died after the mother's release from prison. The mother remained at her house after the death (where the mother's brother and sister initially lived

as well); she said the monthly mortgage payment was $518 and she worked 38 hours a week. The mother's two children who were already residing at the house were placed in the mother's temporary custody under protective supervision after the maternal grandmother's death. There were some concerns with their school attendance. Under her father's supervision and support, M.G. did very well in school, which she loves. The mother testified she lived with a third half-sibling of M.G. as well, noting she has six children. The father's teenage son visits him daily.

**{¶37}** The mother says the court should not have believed the father's testimony promising he would not interfere with her relationship with the child; she points to her testimony that he did not facilitate communication while she was incarcerated and failed to communicate with her after she was released. The caseworker testified the father was compliant with the visitation established after the mother's release and the court-ordered phone contact while she was imprisoned.

**{¶38}** The guardian ad litem recommended the father receive legal custody. The court found the father had strong parenting skills and the child was integrated into his home. The court conducted an in camera interview of the child, which we have reviewed and considered. In a lengthy opinion, detailing the testimony and the various considerations, the court reasonably concluded granting legal custody to the father was in the child's best interest. This was demonstrated by a preponderance of the evidence. We do not substitute our judgment for that of the trial court in considering the weight to assign the evidence on best interest factors. *See Davis*, 77 Ohio St.3d at 417.

**{¶39}** "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * *." *Id.* at 418. The trial judge heard and saw the parties as they spoke and judged their credibility, sincerity, and attitude, which is the trial court's primary function and prerogative. *Id.* at 418-419. The trial court's decision was supported by competent, credible evidence, and we cannot say the trial court abused its discretion in granting custody to the father. This assignment of error is overruled.

**{¶40}** For the foregoing reasons, the trial court's decision is affirmed.

D'Apolito, P.J., concurs.

Hanni, J., concurs.

Case No. 22 MA 0078

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**