[Cite as *In re J.G.*, 2024-Ohio-1101.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

IN THE MATTER OF:

J.G.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0075**

---

Juvenile Appeal from the
Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio
Case No.  2018 JC 00939

**BEFORE:**
William A. Klatt, Retired Judge of the Tenth District Court of Appeals,
Sitting by Assignment,
Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Alyson Byerly Carbon, for* Appellee and

*Atty. Tracey A. Laslo,* for Appellants.

Dated:  March 21, 2024

**KLATT, J.**

{¶1} Appellants, W.M. and R.M., maternal great uncle and great aunt of J.G. (d.o.b. 3/22/2016), appeal the judgment entry of the Mahoning County Court of Common Pleas, Juvenile Division, awarding legal custody of J.G. to his father, S.G. The juvenile court sustained Father's objections to the original and amended magistrate's decision, in which the magistrate concluded J.G.'s best interest was served by Appellants' continuing custody.

{¶2} A.L., J.G.'s mother and his residential parent prior to the decision of the Juvenile Court currently on appeal, suffers from illegal drug dependency and did not participate in the proceedings. Appellants and Father each filed motions for custody of J.G. after Mother relinquished J.G.'s care to Appellants in July of 2021. Father was an illegal drug abuser at the time of J.G.'s birth through October of 2020. Mother and Father regularly entrusted J.G. to Appellants in the first four-and-a-half years of his life.

{¶3} In their first assignment of error, Appellants argue the juvenile court abused its discretion in awarding custody to Father, and the judgment entry is against the manifest weight of the evidence and not supported by clear and convincing evidence. In their second assignment of error, Appellants contend Father committed a procedural error due to his failure to file objections to the magistrate's second amended decision, which was filed after Father's objections to the original and amended decisions were filed. Appellants further argue the trial court exceeded its authority by relying on arguments that were not raised by Father's objections. For the following reasons, the judgment entry of the juvenile court awarding custody of J.G. to Father is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶4} On August 14, 2018, a complaint was filed by the Mahoning County Children Services Agency ("Agency") alleging J.G. was a dependent child. J.G. was twice found wandering unsupervised by a stranger while in Mother's care. As a consequence, J.G. was placed in the interim temporary custody of the Agency.

{¶5} On October 18, 2018, interim temporary custody was awarded to Appellants, based in large measure on the fact that Mother and Father had routinely

placed J.G. in Appellants' care for extended periods of time. Parenting time for Mother was to be supervised by the Agency. Father's parenting time was to be supervised by Appellants.

**{¶6}** After Mother underwent treatment for her addiction, the Agency filed a motion to transfer custody to Mother and for an order of protective supervision on August 2, 2019. On October 23, 2019, custody of J.G. was returned to Mother subject to court-ordered protective supervision. No parenting time was granted to Father at that time. Appellants' temporary custody was terminated.

**{¶7}** After Mother successfully completed additional court-ordered drug treatment programs, protective services were terminated on September 15, 2020. Accordingly, Mother was awarded legal custody and ordered to provide one hour of supervised parenting time per week and video contact two times per week to Father. Father agreed to the juvenile court's award of custody of J.G. to Mother.

**{¶8}** On October 18, 2021, Appellants filed a complaint for custody, as well as a motion for temporary custody and motion for an expedited hearing for educational purposes. J.G. had once again been left in Appellants' care by Mother. Appellants filed the motion for temporary custody and an expedited hearing in order to acquire the legal authority to enroll J.G. in kindergarten.

**{¶9}** On October 21, 2021, the juvenile court awarded temporary custody of J.G. to Appellants. J.G. was enrolled in the Marlington Local School District where he attends Lexington Elementary School. J.G. began kindergarten approximately two months after the first day of school.

**{¶10}** Pretrial hearings were held on January 13, 2022 and February 16, 2022. Both hearings resulted in temporary custody remaining with Appellants. No parenting time for J.G.'s parents was ordered. A guardian ad litem ("GAL") was appointed on February 17, 2022.

**{¶11}** On March 4, 2022, Father filed his motion for custody/reallocation of parental rights and responsibilities and support. At a pretrial hearing on April 6, 2022, Father was awarded supervised parenting time at the Hope House. Father submitted to periodic drug testing pursuant to an order of the juvenile court.

{¶12}  On May 11, 2022, the GAL issued his original report recommending that legal custody be awarded to Appellants.  On May 18, 2022, the competing motions for custody were tried before the magistrate. Mother did not attend the trial.

{¶13}  Father testified he had been sober since October of 2020 (nineteen months of sobriety as of the date of the hearing). He suffers from Post-Traumatic Stress Disorder and is prescribed medical marijuana. He had last seen J.G. on March 22, 2022, and had visited J.G. on three occasions in the previous year.

{¶14}  According to Father's testimony, Appellants had severely limited his ability to visit J.G. and completely prohibited him from spending time with J.G. outside of their home.  Appellants countered they were as cooperative as possible with Father's requests to visit with J.G., however they believed a previously-issued court order required supervised visitation.

{¶15}  Father similarly blamed Mother for his failure to parent J.G. while she was the residential parent.  Despite his allegations, Father conceded he never sought court enforcement of his visitation rights.

{¶16}  At the trial, Father misidentified J.G.'s birthday, could not identify J.G.'s teacher, and had no information regarding J.G.'s classes or grades.  Despite Father's limited exposure to J.G. over the course of the previous year, Father opined that J.G. suffered from depression based on J.G.'s abnormal weight gain and "sad behavior whenever [Father] would leave." (5/18/22 Trial Tr., p. 96.)

{¶17}  Father testified he had been employed as a warehouse selector for roughly one year.  At the hearing on Father's objections to the magistrate's decision roughly one year later, Father had just began working at a new job. There was no testimony taken at the hearing, but the new job was mentioned during a colloquy with the juvenile court regarding drug screening.

{¶18}  At the trial, Father testified he had a child support enforcement obligation of $50 per month for J.G., but was roughly $1,250 in arrears.  Father is legally obligated to financially support two children. Father conceded he did not provide any necessities or sustenance for J.G., nor did he provide any basic care for J.G. in the past year.  Father could not recall when he began making child support payments for J.G.

**{¶19}** Father obtained an independent living space, that is, a small apartment in Kent, Ohio, roughly one month prior to the trial. The GAL expressed concern about the size and location of Father's apartment, as it is located in close proximity to a busy highway. Although there is no yard for recreation at Father's apartment, a park is located within walking distance. The GAL conceded he had not observed any interaction between Father and J.G.

**{¶20}** L.M., J.G.'s paternal grandmother, testified on Father's behalf. She had not seen J.G. since he was two years of age. Father lived with her for approximately four years after Father and Mother ended their relationship. Although Paternal Grandmother conceded Father's illegal drug use, she denied Father was ever addicted to illegal drugs.

**{¶21}** Paternal Grandmother explained she would assist Father with J.G.'s care should he be awarded custody of J.G. However, she conceded on cross-examination that each of her five children had been the subject of Agency intervention and oversight.

**{¶22}** Appellants testified a typical day in J.G.'s life includes quality time with each of them. Great Aunt is J.G.'s full-time caretaker and she assists J.G. with his schoolwork. Great Aunt further testified that she and J.G. play outside with various toys and games. Great Uncle has a full-time position as a laboratory supervisor.

**{¶23}** Great Uncle testified J.G., who was 6 years of age on the date of the hearing, attends counseling because he struggles with the knowledge that he had an older brother who died before J.G.'s birth. J.G.'s preoccupation and sadness about his deceased brother and the instability of his early years prompted Appellants to arrange for counseling sessions for J.G.

**{¶24}** The GAL testified J.G. told him he was "happy" residing with Appellants and had a few friends at school. However, the GAL conceded he had not consulted with J.G.'s counselor or teacher. When asked about Father's belief that J.G. suffered from depression, the GAL responded J.G. was "pretty happy" during the GAL's single visit. (*Id.*, p. 121.) Nonetheless, the GAL expressed concern for J.G.'s health because he is "obesely overweight." (*Id.*)

**{¶25}** According to the GAL, Appellants could not identify J.G.'s pediatrician during their interview. However, J.G. was a patient at Akron Children's Hospital and had seen various physicians there, most recently for a COVID-19 test. Despite Appellants'

inability to identify J.G.'s pediatrician, they informed the GAL that J.G. was fully vaccinated, because it is a requirement for enrollment in public school.

{¶26}  The GAL reported that Appellants provided for J.G.'s basic needs and were his sole financial support.  The GAL opined at the trial that custody should be awarded to Appellants, and Father should be granted progressive liberal visitation.

{¶27}  On December 21, 2022, Father filed an ex parte/emergency motion for immediate custody or visitation.  Although Appellants had agreed to visitation at their residence following the closure of Hope House, Father alleged Appellants terminated all means of contact and/or visitation "under the pretense of being advised to withhold visitation until a decision is rendered."  An agreed entry was filed on December 22, 2022 permitting Father two hours of visitation on Christmas Eve at Appellants' home.

{¶28}  On January 31, 2023, the original magistrate's decision and judgment entry adopting the original decision was filed. On February 3, 2023, an amended magistrate's decision was filed.  On February 6, 2023, a judgment entry adopting the amended magistrate's decision was issued.[1] On February 14, 2023, Father filed objections to the original and amended magistrate's decisions.

{¶29}  On March 16, 2023, a second amended magistrate's decision was filed. For the first time in the second amended magistrate's decision, the magistrate concluded that no change of circumstances had occurred.  The first two magistrate's decisions did not undertake any change of circumstances analysis.  No objections were filed to the second amended magistrate's decision. It appears the second amended magistrate's decision was issued in order to address a change of circumstances, which was one of the objections advanced by Father in his February 14, 2023 pleading.

{¶30}  On March 27, 2023, oral argument on Father's objections was held. At the hearing, Father's counsel incorporated the second amended magistrate's decision into his objections.

---

[1] On February 6, 2023, a magistrate's decision was issued relating to Appellants' request for child support, which was adopted on February 7, 2023.  No appeal was taken from the child support entry.

**{¶31}** On May 1, 2023, the juvenile court conducted an in camera interview with J.G., which the GAL attended. J.G. was seven years of age during the in camera interview and was within a month of completing first grade.

**{¶32}** On May 30, 2023, the GAL filed a supplemental report changing his recommendation. In the supplemental report, the GAL opined that custody should be awarded to Father, with liberal visitation awarded to Appellants. On June 2, 2023, the judgment entry on appeal was issued by the juvenile court sustaining Father's objections and overruling generally the "magistrate's decision."

**{¶33}** In the judgment entry on appeal, the juvenile court first opines that a change of circumstances has occurred based on the "positive improvements" Father had made in his life. The juvenile court also cites J.G.'s considerable weight gain as a change in circumstances. (6/2/23 J.E., p. 3.) The parties concede on appeal that a change of circumstances occurred when Mother, the then-residential parent pursuant to the juvenile court's September 25, 2020 judgment entry, relinquished J.G.'s care to Appellants.

**{¶34}** With respect to the statutory factors, the juvenile court noted "the in camera interview was significantly important in determining this matter and reversing the [magistrate's decision.]" (*Id.*, p. 2.) More specifically, the juvenile court found:

> Father has made great strides in overcoming past challenges. He has made considerable adjustments to his life and home and is prepared to parent [J.G.]. Father is sincere, loving, and caring. He is passionate about raising his son. [Great] Aunt and Uncle have been good guardians of [J.G.] when they were needed to assist. The time has come for Father to assume his role as parent and he is prepared to do so. [J.G.] expressed his wishes and the Court has considered them. The Court found [J.G.] competent, truthful, and sincere. The [GAL] also found [J.G.] to be truthful and honest. The Court finds that [J.G.] loves his Father and wishes to be with him too. Minor Child is appreciative of the care provided to him by [Great] Aunt and Uncle. The in camera interview was very compelling and much weight is given to it by this reviewing Court.

(*Id.*, p. 3.)

Case No. 23 MA 0075

**{¶35}** The juvenile court discounted the fact that Great Aunt provided full-time care for J.G. The juvenile court observed that many parents place their children in day care, and further there is "no evidence that Paternal Grandmother posed any harm to J.G." (*Id.*) Finally, the juvenile court found that Father "will be more likely to facilitate visitation." (*Id.*)

**{¶36}** With respect to the best interest analysis, the juvenile court opined J.G. "does not have access to physical sports but spends most of his time playing videos or watching television." (*Id.*, p. 3-4.) The juvenile court further opined J.G. had "free and open access to non-nutritional food" and his weight gain has "negatively affected his ability to interact with other children."

**{¶37}** The juvenile court concluded, "[t]here has been some significant harm to [J.G.] while in the care and custody of [Appellants'] home and care [sic]. [J.G.] has gained considerable weight and his medical and basic needs are not being addressed despite [Appellants'] testimony." (*Id.*, p. 3.)

**{¶38}** As a consequence, the juvenile court awarded custody to Father, with companionship time awarded to Appellants, including one week during each summer. This timely appeal followed.

## LAW

**{¶39}** The juvenile court has exclusive original jurisdiction to determine the custody of a child who is not a ward of another Ohio court. R.C. 2151.23(A)(2). *See also* R.C. 2151.23(F)(1) (the juvenile court shall exercise its jurisdiction in child custody matters in accordance with R.C. 3109.04). The custody of a child is a "fundamental liberty interest" of a parent. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

**{¶40}** This right of a parent to rear her own child presents itself in custody proceedings between a parent and a non-parent, as opposed to a custody proceeding between two parents. *In re Perales*, 52 Ohio St.2d 89, 96, 369 N.E.2d 1047 (1977). In such a dispute, it has long been held that a "suitable" parent has a "paramount right" to the custody of their minor child "unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children." *Id.* at 97, citing *Clark*

*v. Bayer*, 32 Ohio St. 299, 310 (1877); *Masitto v. Masitto*, 22 Ohio St.3d 63, 65, 488 N.E.2d 857 (1986).

**{¶41}** However, Mother was J.G.'s residential parent, pursuant to the September 15, 2020 judgment entry, when the motions for legal custody filed by Appellants and Father were before the juvenile court. Appellants were awarded temporary custody of J.G. for the purpose of admitting him to public school and during the pendency of Appellants' motion for legal custody, which was combined in the same pleading with the motion for temporary custody. Insofar as the competing motions for legal custody did not involve the original award of custody, but instead a modification of the original award of custody, the suitability test does not apply. *In re DeLucia v. West*, 7th Dist. Mahoning No. 05-MA-5, 2005-Ohio-6933, ¶ 32.

**{¶42}** R.C. 2151.42, captioned "Modification or termination of dispositional order," reads in its entirety:

> (A) At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353, 2151.415, or 2151.417 of the Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child.
>
> (B) An order of disposition issued under division (A)(3) of section 2151.353, division (A)(3) of section 2151.415, or section 2151.417 of the Revised Code granting legal custody of a child to a person is intended to be permanent in nature. A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.

**{¶43}** Although the statute does not provide specific best interest factors, courts may consider the best interest factors in R.C. 2151.414(D) (applicable to permanent custody) in conjunction with R.C. 3109.04(F)(1) (applicable to allocation of parental

rights). *In re M.G.*, 7th Dist. Mahoning No. 22 MA 0078, 2023-Ohio-3423, ¶ 29. The permanent custody statute provides a non-exhaustive list of considerations including the child's interactions, interrelationships, wishes, custodial history, and need for permanence. R.C. 2151.414(D). The custody statute includes similar considerations and additionally lists the child's adjustment, the mental and physical health of all involved, support arrearage, the history and likelihood of honoring visitation orders, certain criminal convictions, and establishment of a residence out of state or plan to do so. R.C. 3109.04(F)(1). Finally, "[a] change of circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.26 1159 (1997).

**{¶44}** Although the trial court was required to consider all relevant factors, the statute does not require a court to address each listed factor considered in its written decision. *In re J.K.*, 7th Dist. Carroll No. 14 CA 899, 2014-Ohio-5502, ¶ 31. Moreover, a court is presumed to consider the factors absent evidence to the contrary. *Id.* citing *In re Henthorn*, 7th Dist. Belmont No. 00BA37 (Nov. 28, 2001).

**{¶45}** "[L]egal custody where parental rights are not terminated is not as drastic a remedy as permanent custody." *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (2001). Accordingly, "[t]he trial court's standard of review is not clear and convincing evidence, as it is in a permanent custody proceeding, but is merely preponderance of the evidence." *Id.* An award of legal custody is reviewed for an abuse of discretion. *Id.* An abuse of discretion exists if the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). If the court's decision on the children's best interests or on other factual issues surrounding legal custody is not supported by competent and credible evidence, then it is unreasonable. *In re M.G.*, 2023-Ohio-3423, 224 N.E.3d 1240, ¶ 9 (7th Dist.).

**{¶46}** Credibility issues are critical in custody cases, and important information may be evident from the demeanor and attitude of the witnesses that does not translate into the record. *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). The trial court is in the best position to weigh the testimony and observe the witnesses' demeanor in order to gauge their credibility. *Id.* at 418-419.

Case No. 23 MA 0075

**{¶47}** The Ohio Supreme Court in *Davis* further cautioned:

" * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."

This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well.

*Id.* at 419, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING LEGAL CUSTODY OF [J.G.] TO [FATHER] AS SUCH DECISION WAS AGAINST THE WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE THAT SUCH DECISION WAS IN [J.G.'S] BEST INTEREST.**

**{¶48}** In their first assignment of error, Appellants argue Father's sobriety is laudable, however he offered no testimony regarding a treatment regimen or a support system in place to maintain his sobriety. They further argue Father has little to no support system to help care for J.G., but for Paternal Grandmother, who has a troubled history of raising her own children.

**{¶49}** Appellants assert the juvenile court ignored Father's lengthy struggle with drug addiction, as well as his failure to financially support J.G. They also cite Father's

employment history alleging that Father has changed jobs three different times in the previous three years.

{¶50} Next, Appellants argue there is no evidence in the record that J.G. has free and open access to non-nutritious food. They argue in the absence of evidence to the contrary that J.G.'s weight problem may be genetic.

{¶51} Finally, Appellants contend there is no evidence in the record to show they intentionally interfered with Father's visitation. They assert the juvenile court blamed them for Father's failure to spend time with J.G., despite Father's historical failure to care for and support J.G. Appellants allege the juvenile court "unmistakably has a strong disdain for [Appellants] for some unknown reason despite [Appellants] willingly and unquestionably caring for [J.G.]" (Appellants' Brf., p. 18.) Appellants conclude, "[i]t is clear that the [juvenile court] supports parents having custody of a child, when it is not in the child's best interest." (*Id.*, at p. 19.)

{¶52} The juvenile court was clearly impressed with Father's efforts to amend his life. As of the date of the oral argument on Father's objections, Father had maintained his sobriety for over two-and-a-half years, and had been living independently for more than one year. Father had been employed for roughly three years. Although he changed employers three times, there is no evidence in the record that he was terminated from any job.

{¶53} Father impressed the juvenile court as "sincere, loving, and caring," and "passionate about raising his son." The foregoing observations fall within the ambit of credibility, which did not translate in the record, so we must defer to the juvenile court's characterization of Father.

{¶54} In determining J.G.'s best interest, the juvenile court was required to consider a non-exclusive list of factors, including the child's interactions, interrelationships, wishes, custodial history, need for permanence, the child's adjustment, the mental and physical health of all involved, any support arrearage, and the history and likelihood of honoring visitation orders. There was no testimony offered at the hearing that J.G.'s interactions and interrelationship would be affected by a change in custody, or that any adjustment, for instance J.G.'s school, would be impacted should Father be awarded custody. As a consequence, the juvenile court focused on two factors, J.G.'s

health and the likelihood that the respective parties would honor visitation orders. Both factors favored Father.

**{¶55}** The juvenile court was particularly troubled by J.G.'s weight. According to Father's testimony, J.G.'s weight increased dramatically over the course of the previous year. The GAL described J.G. as morbidly obese. While Father expressed concern about J.G.'s weight, Appellants neither acknowledged the problem nor offered any testimony regarding their effort to help J.G. maintain a healthy weight.

**{¶56}** Next, the juvenile court opined that Father would be more likely to honor visitation orders. While there was conflicting testimony regarding the responsibility for Father's limited visits over the previous year, we must defer to the juvenile court's credibility determination regarding the parties' dispute.

**{¶57}** Finally, the juvenile court described the in camera interview with J.G. as "very compelling" and the juvenile court afforded "much weight" to the interview in its best interest analysis. Likewise, the GAL amended his recommendation following the in camera hearing in favor of Father.

**{¶58}** "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * *." *Davis, supra,* at 418. The juvenile judge heard and saw the parties as they spoke and judged their credibility, sincerity, and attitude, which is the trial court's primary function and prerogative. *Id.* at 418-419. Having reviewed the record, we find the juvenile court's decision was supported by competent, credible evidence, and therefore, we cannot say the juvenile court abused its discretion in granting custody to Father. Accordingly, Appellants' first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED AS A MATTER OF LAW, THUS ABUSING ITS DISCRETION, IN RULING ON FATHER'S OBJECTIONS TO MAGISTRATE'S DECISIONS WHEN SAID MAGISTRATE'S DECISIONS WERE AMENDED, WITHOUT FURTHER OBJECTION; WHEN THE OBJECTIONS DID NOT COMPLY WITH OHIO RULES OF CIVIL**

**PROCEDURE 53(D); WITHOUT SPECIFICALLY ADDRESSING THE OBJECTIONS RAISED.**

**{¶59}** Appellants argue Father committed a procedural error by failing to object to the second amended magistrate's decision. Although Father did not amend his objections, he did incorporate the second amended magistrate's decision into his objections at oral argument. However, Appellants do not argue they suffered any prejudice as a result of the procedural error.

**{¶60}** Next, Appellants contend Father's objections were general in nature, contrary to the requirements of Civ. R. 54(D)(3)(b)(ii) which reads, "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." To the contrary, Father advances specific procedural and substantive objections to the magistrate's decisions.

**{¶61}** Finally, Appellants assert the juvenile court relied on facts that were not the subject of Father's specific objections. Juvenile Rule 40(D), captioned, "Action of Court on Magistrate's Decision and on Any Objections to Magistrate's Decision; Entry of Judgment or Interim Order by Court," reads in relevant part:

> (b) Action on Magistrate's Decision. Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.

**{¶62}** The juvenile court rejected the magistrate's decision based in large measure on the in camera interview. Insofar as the juvenile court acted within its authority to take additional evidence, we find no procedural error.

**{¶63}** Based on the foregoing analysis, Appellants have failed to demonstrate any procedural error. Accordingly, we find Appellants' second assignment of error has no merit.

**CONCLUSION**

**{¶64}** For the foregoing reasons, the judgment entry of the juvenile court awarding custody of J.G. to Father is affirmed.

Robb, P.J., concurs.

Hanni, J., dissents with dissenting opinion.

Hanni, J., dissenting.

{¶65} With regard and respect to my colleagues, I must dissent from the majority opinion. I agree that Father's current drug-free status is commendable, as well as the facts that he has a job, and recently moved into an apartment.

{¶66} However, reviewing R.C. 2151.414(D), in conjunction with R.C. 3109.04(F)(1), the factors for determining the child's best interest, I would find that it is in J.G.'s best interest to remain with his maternal aunt and uncle. Factors to review include the child's interactions, wishes, custodial history, need for permanence, the child's adjustment, the mental and physical health of all involved, any support arrearage, and the likelihood of honoring visitation.

{¶67} Father has had three jobs in three years and moved into his apartment just one month prior to the court hearing. Father has visited J.G. only three times in the past year.

{¶68} J.G. has a strong relationship with maternal aunt and uncle. Maternal aunt and uncle have been J.G.'s only familial stability throughout his young life. Maternal aunt is home all day and maternal aunt and uncle have consistently provided for J.G's mental and physical needs. They enrolled him in school and have him in counseling to assess and provide for his mental well-being.

{¶69} Father has cared for J.G. for only 2 out of his 7 years of life. Father did not know where J.G. was enrolled for school, who his teachers were, or what his classes or grades were. Father is in arrears with his child support. J.G.'s paternal grandmother has offered to help father provide care for J.G. while father is at work. However, she last saw J.G. when he was two years old and all of her five children had involvement with children's services agencies when they were young. Further, the Guardian Ad Litem (GAL) had not observed any interactions between father and J.G.

{¶70} The court and the GAL expressed great concern over J.G.'s increased weight. The court even considered this weight gain a "significant harm" to J.G. while in the care of maternal aunt and uncle. The court held that due to this weight gain, J.G.'s "medical and basic needs are not being addressed" despite the contrary testimony of maternal aunt and uncle. The court further found that J.G. did not have access to physical sports and spent most of his time playing videos or watching television.

Case No. 23 MA 0075

{¶71} However, the GAL did not speak to J.G.'s teachers, counselor or the pediatricians who had treated J.G. to provide additional relevant information, considering the significance placed on this factor. Further, there was no evidence that J.G. lacked access to physical sports or activity while in the custody of maternal aunt and uncle.

{¶72} Accordingly, I would find that the court abused its discretion by overruling the magistrate's decision and granting custody to father. I would sustain maternal aunt and uncle's first assignment of error.

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**