**[Cite as *In re G.M.*, 2026-Ohio-841.]**

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE G.M.                                      :
                                                :          No. 115263
A Minor Child                                   :
                                                :
[Appeal by Father, B.D.]                        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 12, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD19900756

---

### *Appearances:*

Christina M. Joliat, *for appellant*.

LISA B. FORBES, P.J.:

{¶ 1}  B.D. ("Father") appeals the juvenile court's denial of his motion to modify legal custody of his child, G.M. ("G.M." or "the Child"), in which Father requested that the court grant him full legal custody.  After a thorough review of the facts and the law, we affirm.

## I. Facts and Procedural History

### A. Background and Motion for Legal Custody

{¶ 2} S.M. — the Child's maternal grandmother ("Grandmother") — became the Child's legal guardian in March 2017. The Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the Agency") filed a complaint with the juvenile court in 2019, alleging that Grandmother's boyfriend — D.M. — had inappropriately disciplined the Child. The Child was subsequently adjudicated to be abused and neglected and was committed to temporary Agency custody. After Grandmother and D.M. completed case-plan services, the Child was reunited with Grandmother. The juvenile court committed the Child to Grandmother's legal custody on January 23, 2020.

{¶ 3} On October 10, 2024, Father filed a motion to modify legal custody of the Child, requesting that the juvenile court grant him full legal custody. The court held the following proceedings concerning Father's motion.

### B. Interview with the Child

{¶ 4} On April 24, 2025, the juvenile court conducted an in camera interview of the Child, who was accompanied by his guardian ad litem ("GAL"). The Child provided the court the following information.

{¶ 5} The Child attended the same school where Grandmother was employed. He did well in class. He played soccer, had participated in outdoor track, and was on a robotics team, apparently through his school. Father had attended some of the Child's events.

{¶ 6} The Child visited Father on alternating weekends. He felt safe both at Father's house and at Grandmother's. Grandmother previously lived with her boyfriend — D.M. — but he did not live with them at the time of this hearing. The Child and Grandmother visited D.M. sometimes. D.M. had physically harmed the Child, but this happened in 2018.

## C. Hearing

{¶ 7} Also on April 24, 2025, the juvenile court held a hearing at which witnesses testified regarding D.M.'s residence and disciplinary tactics since the Child's reunification with Grandmother, the Child's behavioral and mental-health issues and resulting educational needs, Grandmother and Father's abilities as caregivers, and Father's criminal record. The parties and the GAL for the Child provided testimony.

### 1. J.M.

{¶ 8} J.M. ("Mother") testified that she is G.M.'s mother. She supported Father having full legal custody of the Child. Mother knew that Grandmother lived or had lived with D.M. Mother "had concerns" about the Child living in the same home as D.M.

### 2. Father

{¶ 9} Father testified that Grandmother lived with D.M., a man who had "a documented history of physically abusing my son and his cousin." D.M. had beaten the Child with an extension cord in the past. Father also took issue with Grandmother's having moved G.M. between several homes and school districts.

{¶ 10} Father was pursuing legal custody because he believed that he had become a "fit biological parent." Father testified that, when "the original custody battle [occurred], I was freshly released from prison," after having been incarcerated for four years. At the time of this hearing, he worked "freelance" doing "construction" and "online sales."

{¶ 11} Father saw G.M. every other weekend and described him as "a model child when he's with me." He stated, "I would definitely love to spend more time with my son, and it would benefit him."

{¶ 12} On cross-examination, Father agreed that, in 2025, he pled guilty to misdemeanor attempted-drug possession and was sentenced to a nonprison sanction. He also agreed that he had not taken the Child to doctor's appointments or for other medical treatment related to abuse.

### 3. Grandmother

{¶ 13} Grandmother asked to maintain legal custody of G.M. and testified that she had taken care of the Child since his birth. However, Grandmother explained that for a brief time when he was very young, the Child lived with Mother who attempted to abandon him at a police station and at a fire station.

{¶ 14} G.M. had received "several different diagnoses . . . due to trauma." The Child was aggressive towards other children and did not make friends easily. He attended monthly appointments with a psychiatrist and had been diagnosed with reactive attachment disorder, anxiety disorder, and attention-deficit hyperactive

disorder. Grandmother took the Child to appointments related to his mental health, at which Father had not been present.

{¶ 15} Regarding G.M.'s education, Grandmother testified that she worked at the Child's current school. She explained that she moved him to this school at the beginning the then-current schoolyear "because the doctors and I decided that 30 kids in a classroom is not a good fit for him," given his behavioral and mental-health diagnoses. She "had to go through so many programs to get him the services and the things that he needs."

{¶ 16} Regarding D.M., Grandmother testified, "I no longer live with him." She had not observed D.M. strike or discipline G.M. inappropriately since her reunification with the Child in 2020.

### 4. The GAL

{¶ 17} The GAL for G.M. opined that "there [had been] no change of circumstances to warrant a change of custody." The GAL was "unaware of any physical abuse" that had occurred since Grandmother and the Child had been reunited in 2020. The GAL knew that D.M. had resided with Grandmother and the Child in the past, but testified that D.M. did not reside with them at the time of this hearing.

### D. The Juvenile Court's Rulings and This Appeal

{¶ 18} On May 14, 2025, the magistrate issued a decision that recommended that the motion to modify legal custody be denied. The magistrate determined that

"a change in circumstances ha[d] not occurred" and that a "modification [was] not necessary to serve the best interests of the child."

{¶ 19} Father filed objections to the magistrate's decision on May 20, 2025. Pertinent to this appeal, Father asserted, "No reliable evidence exists on record justifying the denial of custody to Movant, nor any factual finding that such denial serves the best interest of the child."

{¶ 20} On May 21, 2025, the juvenile court issued a journal entry that overruled Father's objections to the magistrate's decision. On June 2, 2025, the juvenile court issued a judgment entry indicating that the court had conducted an independent review of the record and entering judgment denying Father's motion to modify custody.

{¶ 21} From this journal entry, Father appeals, raising the following assignment of error:

> The trial court's order denying the father's motion to modify custody and denying it, without expanded parenting time, to maternal grandparent is against the manifest weight of the evidence and an abuse of discretion, and is not in the child's best interest.

## II. Law and Analysis

{¶ 22} R.C. 3109.04(E)(1)(a) sets forth a two-part standard — involving changed circumstances and a child's best interest — that courts apply in ruling on a motion to modify a legal custody arrangement ordered by a prior court decree. *See In re James,* 2007-Ohio-2335 (applying R.C. 3109.04 to assess biological parents' motion to modify custody; the child had been adjudicated abused and dependent; following the adjudication, the parents voluntarily relinquished custody and the

child's grandparents were awarded legal custody; the parents filed their motion to modify three years later).[1] *See also* R.C. 2151.23(F)(1) ("The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04.").

{¶ 23} "The court shall not modify a prior decree . . . unless it finds . . . that a change has occurred in the circumstances of the child [or] the child's residential parent. . . ." R.C. 3109.04(E)(1)(a). The change of circumstances necessary to modify a parental-rights decree must be based on facts that have arisen since the prior decree was issued. *In re J.C.*, 2019-Ohio-107, ¶ 20 (8th Dist.); *In re J.T.*, 2025-Ohio-5349, ¶ 9 (8th Dist.).

{¶ 24} Before modifying a prior decree, the court must also find that modification "is necessary to serve the best interest of the child." R.C. 3109.04(E)(1)(a). R.C. 3109.04(F)(1) provides that, in determining a child's best interest in the context of a motion to modify a prior decree, a court "shall consider all relevant factors," including those enumerated in the statute. Pertinent here, among the enumerated factors, a court shall consider: "[t]he wishes of the

---

[1] The majority in *James* concluded that R.C. 3109.04 required both that a change in circumstances occurred and that a modification to the custody decree was in the best interest of the child. Three dissenting justices asserted that R.C. 3109.04 did not apply in cases involving modification of a custody decree issued by a juvenile court (rather than a domestic relations court). R.C. 2151.42(B) addresses modification of an order of custody by a juvenile court. Like R.C. 3109.04, it requires a showing of a "change in the circumstances of the child or the person who was granted legal custody" and that a "modification . . . of the order is necessary to serve the best interest of the child." R.C. 2151.42(B). The *James* majority noted that whether applying R.C. 3109.04 or R.C. 2151.42, "the analysis under either statute would be similar." *James* at ¶ 26.

child's parents regarding the child's care," the child's wishes, if and as expressed to the court during an in-chambers interview, "[t]he child's interaction and interrelationship with the child's parents . . . and any other person who may significantly affect the child's best interest," "the child's adjustment to the child's home, school, and community," and the "mental and physical health of all persons involved in the situation . . . ." R.C. 3109.04(F)(1)(a)-(e).

{¶ 25} A juvenile court decision regarding legal custody of a child must be supported by a preponderance of the evidence. *See In re T.R.*, 2015-Ohio-4177, ¶ 44 (8th Dist.) (A juvenile court awards legal custody following an adjudication of abuse, neglect, or dependency using a preponderance-of-the-evidence standard.). *See also Stevenson v. Kotnik*, 2011-Ohio-2585, ¶ 51 (11th Dist.); *In re Z.l.A.*, 2025-Ohio-2355 ¶ 10 (2d Dist.); *In re S.T.*, 2025-Ohio-1379 ¶ 17 (6th Dist.) (applying a preponderance-of-the-evidence standard in reviewing a juvenile court's ruling on a motion to modify legal custody under R.C. 3109.04(E)(1)(a)). A preponderance of the evidence is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." (Cleaned up.) *A.C. Asset, L.L.C v. Mitchell*, 2022-Ohio-1763, ¶ 30 (8th Dist.).

{¶ 26} "We review a trial court's decision in child custody matters for an abuse of discretion." *In Re J.C.*, 2019-Ohio-107, at ¶ 15 (8th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Abdullah v. Johnson*, 2021-Ohio-3304, ¶ 35. An abuse of discretion "'implies that the court's attitude is

unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 27} Father asks us to consider whether the manifest weight of the evidence supported the juvenile court's denial of his motion seeking legal custody of the Child.

> When reviewing the manifest weight of the evidence in a civil case, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts of evidence, the jury or factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered.

*In re A.D.*, 2024-Ohio-4793, ¶ 57 (8th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 28} Regarding testimony, the finder of fact is in the "best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony." *State v. Sheline*, 2019-Ohio-528, ¶ 100 (8th Dist.).

{¶ 29} In his appellate brief, Father appears to identify three reasons that the juvenile court should have granted his requested modification of legal custody: G.M. resided with D.M. after a finding of abuse; Father's parenting ability; and Grandmother's decisions to move G.M. from one school to another. We consider Father's arguments and find that the court did not err in denying the motion.

{¶ 30} Father argues that "the abuser residing with [G].M. after the closing of the agency case is a change of circumstances that [should have been] the basis of a custodial change." We disagree. We find that the juvenile court did not abuse its discretion by concluding that the evidence as to the Child's residence did not demonstrate a change of circumstances. We also find that this conclusion was not against the manifest weight of the evidence. We acknowledge that G.M. was adjudicated to be abused and neglected in 2019 following a CCDCFS complaint that alleged that D.M. had excessively disciplined the Child. However, that finding of abuse predates the parenting decree that Father seeks to modify; therefore, it does not constitute a changed circumstance. *See* R.C. 3109.04(E)(1)(a).

{¶ 31} Father has not identified any abuse of G.M. that has occurred since the 2019 CCDCFS complaint. In response to the juvenile court's questions about whether D.M. had "hurt" the Child, the Child identified only an incident that occurred in 2018. After the Child was found to be abused and neglected in 2019, Grandmother and D.M. completed case-plan services and were reunited with the Child. Father had not taken the Child to seek medical care related to abuse at any point since 2020. Grandmother was also not aware of any abuse of the Child during that same time period, testifying:

> The GAL: Since [2020], has [D.M.] struck or did any inappropriate discipline of the child?
>
> Grandmother: No.

{¶ 32} Further, the testimony of Grandmother and the GAL contradicted Father's assertions that D.M. resided with the Child. Regarding D.M., Grandmother

testified, "I no longer live with him." The GAL also testified that, while D.M. had resided with Grandmother and the Child in the past, he no longer did. The Child conveyed that same information to the juvenile court during his interview.

{¶ 33} Based on the record before us, Father has not demonstrated a change of circumstances based on "the abuser residing with [Grandmother] after the closing of the agency case." To the extent there has been any change, Grandmother testified that D.M. no longer lives with Grandmother and the Child. The trial court's conclusion that Father had not demonstrated changed circumstances was not against the manifest weight of the evidence, and the juvenile court did not abuse its discretion in concluding Father did not demonstrate a change of circumstances so as to warrant a modification of the award of legal custody to Grandmother.

{¶ 34} Father also argues that the juvenile court should have granted him legal custody in light of his current fitness as a parent and his desire to spend more time with the Child. However, Father's desire to spend more time with the Child and his ability to care for the Child at the time of the proposed legal custody modification cannot, as a matter of law, support a finding of changed circumstances. *See* R.C. 3109.04 (concerning whether there has been a change in the circumstances of the child or residential parent). As such, the trial court's finding of no changed circumstances was not against the manifest weight of the evidence, and the trial court did not abuse its discretion in arriving at that conclusion.

{¶ 35} Father further claims, in support of his assertion that the juvenile court should have granted his request for legal custody, that "the [C]hild has not

been stable in his education as he has had three schools despite his educational needs." During the hearing, Grandmother acknowledged that the Child had changed schools since they were reunited in 2020 and that he had recently begun attending the school where she worked. We note that not every change in circumstances will support modification of a custody order. A change must be of substance. *See In re A.P.*, 2021-Ohio-1229, ¶ 12 (9th Dist.). *See also In re J.G.*, 2024-Ohio-1101, ¶ 43 (7th Dist.), quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997) ("'[A] change of circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order.'"). We recognize that the juvenile court found no change of circumstances; however, that finding is not determinative of this matter.

{¶ 36} Assuming without deciding that the Child's transfers between schools constitute a change in his circumstances, we do not find that the court erred in concluding that a modification was not necessary to serve the Child's best interest. Grandmother explained that the Child had enrolled in different schools because Grandmother and the Child's doctors determined that the Child would benefit from smaller class sizes given his behavioral and mental-health issues. Grandmother testified that she had cared for the Child since his birth (other than the brief time he was with Mother). Grandmother took the Child to appointments related to his mental health, at which Father had not been present. She had "go[ne] through . . . many programs to get him the services and the things that he needs." The Child also expressed to the court that Grandmother worked at his current school, that he was

doing well in class, and that he was involved in several activities, apparently through his school. The Child informed the court that he felt safe in the homes of both Grandmother and Father.

{¶ 37} Concerning the evidence that Father introduced at hearing, Father attempted to demonstrate that his parental fitness had improved since the 2020 decree that awarded Grandmother legal custody of the Child. Father testified that he had been "freshly released" from prison at the time of the original parenting decree, while he now worked freelance construction and online sales jobs. Father saw G.M. on alternating weekends and stated that G.M. was a "model child" when they were together. Father also called Mother as a witness, who supported Father having full legal custody of the Child. Regarding Father's criminal history, we note that an additional conviction was entered against him as recently as 2025.

{¶ 38} We commend Father for his willingness to remain engaged in the Child's life and for his interest in increasing his role in the Child's life. However, given the foregoing evidence, including the testimony as to Grandmother's significant efforts to connect the Child with care related to his mental-health and behavioral issues, we do not find that the juvenile court abused its discretion in determining that the Child's best interest was served by remaining in Grandmother's legal custody. Likewise, we find that Father has not demonstrated that that finding was against the manifest weight of the evidence.

{¶ 39} Lastly, to the extent that Father's assignment of error includes a request for "expanded parenting time" short of a full custody order, we find that

Father made no such request in his motion to modify legal custody or at the hearing. As such, Father did not preserve this issue for appeal, and we cannot address it. *See State v. Smith*, 2020-Ohio-1026, ¶ 13 (8th Dist.) ("A party cannot raise new issues or arguments for the first time on appeal; failure to raise an issue before the trial court results in a waiver of that issue for appellate purposes.").

{¶ 40} Father's sole assignment of error is overruled.

{¶ 41} Judgment affirmed.

It is ordered that appellant pay the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

MARY J. BOYLE, J., and
ANITA LASTER MAYS, J., CONCUR